# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GLENFORD EDWARD ENNIS,

    Petitioner,

vs.

DWIGHT NEVEN, et al.,

    Respondents.

Case No. 2:06-CV-01271-KJD-(PAL)

**ORDER**

    Before the Court are the Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#13), and Respondents' Answer (#24). The Court finds that relief is not warranted and denies the Amended Petition (#13).

    This action arises out of two cases in the Eighth Judicial District Court of the State of Nevada. In Case No. C175291, Petitioner was charged with coercion and attempted murder of Michelle Welch on February 18, 2001. Ex. 3 (#24-2, p. 9).[1] In Case No. C175292, Petitioner was charged with burglary and murder of Michelle Welch with the use of a deadly weapon on March 30, 2001. Ex. 9 (#24-3, p. 31). The cases were consolidated. After a jury trial, Petitioner was convicted of coercion with physical force and attempted murder in C175291 and second degree murder with the use of a deadly weapon in C175292. Ex. 18 (#25-13, p. 17), Ex. 19 (#25-13, p. 20). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 26 (#26-1, p. 10).

---

[1] Page numbers in parentheses refer to the Court's computer images of the documents.

1        Petitioner then filed in state court a habeas corpus petition and a supplement.  Ex. 29
2   (#26-3, p. 3), Ex. 31 (#26-4, p. 14).  The district court denied the petition.  Ex. 35 (#26-5, p. 11).
3   Petitioner appealed, and the Nevada Supreme Court affirmed.  Ex. 39 (#26-7, p. 1).
4        Petitioner then commenced this action.  The Amended Petition (#13) contained eight
5   grounds.  The Court dismissed Grounds 1, 2, 4, 7, and 8 before serving the Amended Petition upon
6   Respondents.  Respondents have answered Grounds 3, 5, and 6.
7        "A federal court may grant a state habeas petitioner relief for a claim that was
8   adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was
9   contrary to, or involved an unreasonable application of, clearly established Federal law, as
10  determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15
11  (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision
12  that was based on an unreasonable determination of the facts in light of the evidence presented in
13  the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions.  We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

19  Id. at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court
20  may not issue the writ simply because that court concludes in its independent judgment that the
21  relevant state-court decision applied clearly established federal law erroneously or incorrectly.
22  Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76
23  (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed, 545 U.S. 1165 (2005).

Grounds 3, 5 and 6 are all claims of ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel <u>per se</u>, but rather a fair proceeding with a reliable outcome.  See <u>Strickland</u>, 466 U.S. at 691-92.  See also <u>Jennings v. Woodford</u>, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance.  The petitioner must also show that the attorney's sub-par performance prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 691-92.  There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different.  <u>Id.</u> at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>

If a state court applies the principles of <u>Strickland</u> to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied <u>Strickland</u> in an objectively unreasonable manner to gain federal habeas corpus relief.  <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (<u>per curiam</u>).

In Ground 3, Petitioner claims that trial counsel was ineffective because he did not object to inadmissible hearsay testimony.  The Nevada Supreme Court held:

> Ennis asserts that his counsel failed to object to the testimony of Emma Williams, the victim's maternal aunt.  Emma testified, "I was on the phone talking to my mom, and all of a sudden she got real quiet, she wasn't saying anything.  And I asked her what was wrong, and she told me that Glen had come in the house and he was jumping—."  Ennis's attorney then stated, "Judge, if I may pose an objection.  There is no foundation as to the hearsay that—in the record."  The district court sustained the objection and then stated, "Let's back up a little bit." [Footnote 48: Notably, Michelle's grandmother also testified directly prior to Emma's testimony.  She was also called as a witness by Ennis but was not questioned regarding her statement made to her daughter over the phone.]  Williams then testified that "[m]y mom asked me to call the police, because she said Glen was there jumping on Michelle."  Michelle's grandmother was present on the day of the killing and testified that she heard the altercation between Michelle and Ennis while she was on the phone with Williams.
>
> Ennis's ineffective assistance of counsel claim lacks merit because he has failed to demonstrate that he suffered any prejudice from Williams's testimony.  Ennis admitted being at the house and killing Michelle, claiming it was done in self-defense.  Therefore, Williams's testimony placing him at the scene did not prejudice him.
>
> Moreover, his attorney did object, a better foundation was laid, and Williams's testimony clearly falls within the excited utterance exception to the hearsay rule.  Trial counsel need not lodge futile objections to avoid ineffective assistance of

counsel claims. Therefore, the district court did not abuse its discretion in permitting the statement to be admitted and counsel did not render ineffective assistance.

Ex. 39, pp. 14-15 (#26-7, pp. 15-16) (footnotes omitted except where noted). The Nevada Supreme Court's analysis shows that Petitioner's claim is not supported by the record and also that Petitioner's own admissions removed the prejudice from any putative lack of objection. The Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

        In Ground 5, Petitioner claims that counsel was ineffective for failing to call as a witness his supervisor, regarding Petitioner's history of work absences and domestic disputes. Petitioner argues that his supervisor, Mandy, would also have informed the jury about the events on February 18, 2001, that led to the charges of coercion and attempted murder. The Nevada Supreme Court summarily dismissed this claim, stating, "We have reviewed Ennis's other arguments concerning ineffective assistance of counsel and cumulative error and conclude they are without merit." Ex. 39, p. 15 n.51 (#26-7, p. 16). In reviewing the record, the Court finds that the argument in opposition to Petitioner's state habeas corpus petition is persuasive. See Ex. 30, pp 7-8 (#26-4, pp. 8-9). At trial, Petitioner testified about the events of February 18, 2001:

> Q    And you were home. Were you at work that day, or what was the circumstances?
> A    I left work and came home.
> Q    And what did you do?
> A    I was watching a soccer game, so I lay across the bed and took my keys and my cell out of my pocket and rested on the bed. At that time, as the game was going on, Michelle came home and she said hi and I said hi. She said, what are you doing home? I said, I'm relaxing until it's time for me to go to my other job. She said—
> Q    That would be the Four Seasons?
> A    That's the Four Seasons. I had to be at the Four Seasons at 3:30. My phone then ring and she snatched it up. I then jumped up and snatched it from her and pushed her with my hand. I told her, I said, don't be answering my phone. At the same time, I reached over and clicked it off. And she started arguing, she said—excuse my language—she said, yeah, was that some fucking bitch calling you? I said, why do you always think it's some bitch calling me, it could be anybody, it could be a friend, it could be a co-worker, it could be my job, tells me that I have to come in, you know. At that time, she snatched my keys up. I then grabbed her, I tried to get my keys away from her, which we started tussling.
> Q    So, did you have a fight?
> A    Yeah, it eventually led to a fight because I'm trying to get the keys away from her.

1  Ex. 15, pp. 107-08 (#25-7, pp. 9-10).  Petitioner's own testimony informed the jury about the events
2  on February 18, 2001.  Moreover, Petitioner provided better information than Mandy could have
3  provided, because Petitioner disconnected the cellular phone call right after it was answered; Mandy
4  would have been able to testify only that she heard the start of an argument.  Mandy might have had
5  information about Petitioner's history of work absences, but that history is not relevant to charges of
6  coercion and attempted murder.  Mandy might have had information about Petitioner's history of
7  domestic disputes, but unless she observed them herself, such information would have been
8  inadmissible hearsay, and Petitioner could have provided the same information through his
9  testimony.  Counsel was not ineffective because he did not call Mandy as a witness.

10  In Ground 6, Petitioner claims that counsel should have objected to comments by the
11 prosecutor at the closing argument.  The Nevada Supreme Court summarily dismissed this claim.
12 Ex. 39, p. 15 n.51 (#26-7, p. 16).  First, Petitioner argues that the following is improper vouching or
13 denigration by the prosecutor:

> You can clearly see the defendant's intent and his motivation and the dynamics of this relationship through the history, starting back September 27, 1999.  Officer Vaughn responds to a domestic violence call at 3739 Nairobi Lane.  At that point, he meets up with Michelle Welch for the first time.  He finds her to be calm, he finds her to be without any visible injuries.  And she tells him that her boyfriend, Glenford Ennis, choked her and bit her.  And back on September 27th of 1999, Officer Vaughn testified that he did not believe her.  But the fact that Officer Vaughn did not believe her on September 27th of 1999 does not make that allegation false.  What it represents is the beginning, the very beginning, a minor situation where there were no visible injuries.

20 Ex. 16, p. 57 (#25-11, p. 10).  In argument the prosecutor can comment on witnesses' credibility as
21 long as it does not amount to personal vouching or denigration.  See United States v. Berger, 295
22 U.S. 78, 88 (1935).  "Vouching consists of placing the prestige of the government behind a witness
23 through personal assurances of the witness's veracity, or suggesting that information not presented
24 to the jury supports the witness's testimony."  United States v. Necoechea, 986 F.2d 1273, 1276 (9th
25 Cir. 1993).  In this case, the prosecutor did not personally assure the jury that Michelle Welch was
26 telling the truth, regardless of what Officer Vaughn believed.  The prosecutor argued that the jury
27 could believe Welch's complaint about what happened on September 27, 1999, based upon

Petitioner's subsequent violence, which the prosecutor then described. See Ex. 16, pp. 57-58 (#25-11, pp. 10-11). The prosecutor's comments were unobjectionable.

Second, the prosecutor related to the jury Petitioner's repeated statements to Welch on March 30, 2001, that he wanted to kill her. See Ex. 16, pp. 59-61 (#25-11, pp. 12-14). Petitioner argues that counsel should have objected to this argument because the statements were prejudicial. These statements were unobjectionable because they were Petitioner's own admissions, and because they were highly probative toward the intent to kill Welch. Counsel would not have succeeded with an objection.

Ground 7 is a claim of cumulative error. The Court will reconsider Ground 7 because, subsequent to its dismissal, the Court of Appeals for the Ninth Circuit determined that the Supreme Court of the United States had clearly established that a claim of cumulative error exists in federal habeas corpus. Parle v. Runnels, 505 F.3d 922, 927 (citing Chambers v. Mississippi, 410 U.S. 284 (1973)). As noted above, there were no errors in Grounds 3, 5, and 6. Therefore, no cumulative error existed that could warrant relief.

IT IS THEREFORE ORDERED that the Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#13) is **DENIED**. The Clerk of the Court shall enter judgment accordingly.

DATED: April 8, 2009

_____
KENT J. DAWSON
United States District Judge